[Smith *et al.* v. McCadden & McElwee.]

# Smith *et al. v.* McCadden & McElwee.

*Bill in Equity to have Conveyance of Debtor's Property declared General Assignment for benefit of Creditors.*

1. *General assignment; when mortgage of property declared general assignment.*—Debtors, with knowledge and consent of one who had endorsed their promissory note, conveyed to the manager of their business substantially all of their property, with the understanding and agreement that the grantee would execute to the endorser a mortgage in payment of his liability as endorser, although the note had not matured, and upon the further condition that such endorser would pay the debtors a stipulated sum in cash. In pursuance of this agreement and at the time of the execution of the conveyance, and as a part of the same transaction, the endorser paid the sum stipulated in cash to the grantors in the conveyance and the grantee in the conveyance executed a mortgage to the endorser upon the property conveyed to him, to secure the payment of the amount of the note and the sum paid in cash. The grantee in said conveyance paid no money or other valuable consideration for the property, but was to have any surplus that might be left over after paying the endorser. The mortgage from the grantee to the endorser recited that it was given for the purchase money advanced by the endorser to the grantee to purchase said property, but in truth and fact, the mortgage was given under the circumstances above stated. *Held*: That the grantee in the conveyance from the debtors was a mere conduit and was used as a mere instrumentality for evading the statute relating to general assignments, and that the endorser's attitude towards the debtors was that of creditor within the meaning of the statute, and that the transaction amounted to a general assignment for the benefit of all the creditors of said debtors, (Code , § 2158).—Tyson, J., *dissenting.*

APPEAL from the Chancery Court of Madison.
Heard before the Hon. WILLIAM H. SIMPSON.
This cause is before this court upon an appeal from

a decree overruling demurrers filed in the court below in behalf of W. F. Struve, Jr., and O. A. Smith, respondents. The original bill was filed in behalf of McCadden & McElwee, a New Jersey corporation, and of all other creditors who might become parties complainant, and contribute to the costs and expenses of the suit against Wilfred Paley and Robin L. Paley, individually, and as partners composing the firm of the British Furniture Co., O. A. Smith and William F. Struve, Jr.

A brief summary of the facts as alleged in the bill is as follows: That the complainant is a non-resident corporation engaged in the furniture business; that Wilfred Paley and Robin L. Paley are non-residents of Alabama; that, on the 20th day of May, 1902, and for more than twelve months prior thereto, the Messrs. Paley were doing business as partners under the firm name of British Furniture Co., in the city of Huntsville; that prior to the 12th day of April, 1902, said firm of British Furniture Co. borrowed from a bank in Huntsville, the sum of $1,000.00, evidenced by a promissory note, payable on August 18, 1902, upon which the defendant, Struve, became endorser and surety; that O. A. Smith was the manager and in possession of the books, accounts and effects of said firm, and was fully aware, at all times, of the true financial status of same; that on the said 20th day of May, 1902, the said British Furniture Co. was indebted to complainants, McCadden & McElwee, in the sum of $122.13, and to other creditors in various and sundry sums; that on the said 20th day of May, 1902, the British Furiture Co., with the knowledge and consent of defendant Struve, conveyed and transferred to O. A. Smith, their manager and book keeper, all of their stock of goods, accounts, leases and choses in action, with the understanding and agreement that the said Smith should execute to said Struve a mortgage, in payment of said indebtedness, or liability of said Struve, as the endorser of said note of $1,000.00, borrowed from the bank by the British Furniture Co., and upon the further condition that the said William F. Struve should pay to the said British Furniture Co. the sum of $150.00 in cash; that, as a fact, the said Smith paid no money or other valuable considerations for said

property, but was to have any surplus that might be left after paying off said sum of $1,000.00 to defendant Struve; that in pursuance of such agreement, the said Smith executed to the defendant Struve, the mortgage conveying all of said property of the British Furniture Co., in payment of said indebtedness of $1,000.00. The bill further avers that this mortgage recites that the sum of $1,000.00 was for purchase money advanced by Struve to the said Smith to purchase the said property of the said British Furniture Co., but, in truth and fact, the same was given and executed but to pay and secure the sum of $1,000.00, and the said sum of $150.00 was paid merely with the view to avoid the provisions of section 2158 of the Code of Alabama, making a conveyance of substantially all of a debtor's property to one or more creditors of the same force and effect of a general assignment; that O. A. Smith owns no property other than that acquired in said agreement between the parties. The bill further avers that by the execution of said mortgage, a priority of payment is given to the defendant Struve over the other creditors of the said British Furniture Co.; that the defendant O. A. Smith, at the time of the filing of the bill, was in possession of said property conveyed by said mortgage, and that he was duly disposing of same, and, under the agreement made with Struve, was paying over to said Struve, each week, the entire amount of the proceeds in said business. A copy of the mortgage is attached to the bill as an exhibit.

The prayer of the bill is for an injunction to issue, restraining the defendants Smith and Struve, or their agents, from further disposing of said property; for a receiver to take charge of and preserve said goods and property until final decree, and for a decree declaring the said mortgage to inure for the benefit of all creditors who might join in same, and requiring an accounting from said Struve and Smith and payment to the register of all monies arising from sale of goods or the conduct of the said furniture business since the execution of the mortgage.

To the bill as filed the defendants Smith and Struve separately demurred upon the following grounds:

[Smith *et al.* v. McCadden & McElwee.]

1. The object of said bill is to set aside a mortgage made by the defendant O. A. Smith to this defendant, and the complainants and other creditors named, are shown not to be creditors of the said mortgagor. 2. It appears from said bill that said mortgage was executed in good faith and to secure a debt contracted contemporaneously with the execution of said mortgage. 3. It is not shown by said bill that this defendant had any knowledge of the alleged relations existing between the defendant, O. A. Smith, and the defendant, British Furniture Company. 4. It is not alleged in said bill that in the execution of said mortgage, any benefit was reserved to the defendant, O. A. Smith or the defendant, British Furniture Company. 5. The object of the said bill is to have declared a general assignment a certain mortgage executed by the defendant, O. A. Smith to this defendant, and it appears from the said bill, that the complainants are not creditors of the said mortgagor, but are creditors of other parties from whom it is alleged said mortgagor purchased said stock of goods. 6. It is not shown by said bill that the defendant, British Furniture Company, Wilfred Paley and Robert L. Paley are insolvent. 7. It appears from said bill and the exhibits thereto, that said mortgage was given to secure a debt, contracted contemporaneously with the execution thereof. 8. It appears from said bill and the exhibits thereto, that the money with which to purchase said stock of goods, was advanced by this defendant to said defendant Smith, for the purpose of purchasing said property for which said mortgage was given on the same day the said mortgage was executed. 9. It appears from said bill that the debt, said mortgage was given to secure, was contracted contemporaneously with the execution of said mortgage by said defendant, Smith, and the money so advanced him at that time was used by him in the purchase of said stock of goods, and it does not appear from said bill that this defendant knew of the relations alleged to exist between said defendant Smith, and said British Furniture Company.

Upon the submission of the cause upon the demurrers to the bill, the chancellor rendered a decree overruling them. From this decree the respondents appeal, and assign the rendition thereof as error.

[Smith *et al.* v. McCadden & McElwee.]

COOPER & FOSTER, for appellants.—The conveyance of substantially all of the debtors' property to Smith invested him with the legal title; the consideration expressed in said conveyance was sufficient to uphold it. Smith was not a creditor of the grantor debtors and could not, therefore, be in the attitude of being a mere conduit of title to another creditor. The transaction cannot be construed to be a general assignment, within the meaning of section 2158 of the Code.—*Bank v. Dickinson,* 107 Ala. 265; *Eufaula Gro. Co. v. Petty,* 116 Ala. 260; *Carter v. Coleman,* 84 Ala. 256; *Lane v. Westmoreland,* 79 Ala. 372; *Swartz v. Siegel,* 114 Fed. Rep. 1001.

KING & BANKHEAD and S. S. PLEASANTS, *contra.*— Where a preference is created by an assignment of substantially all of a debtor's property, his other creditors have the right to pursue the *corpus* of his estate—his tangible assets—no matter by what fictitious or specious subterfuge they may be sought to be concealed, or the right to their possession obscured. The law will not permit that to be done indirectly, which cannot be done directly. "The law no more tolerates an invasion of the statute by artifice, than a palpable violation of it. *Holt v. Bancroft,* 30 Ala. 193; *Danner v. Brewer,* 69 Ala. 191; *Russell v. Davis,* 133 Ala. 647.

If the facts alleged can be proved, a case within the provisions of the statute is clearly made,—a specific trust for the benefit of all creditors is created,—of which a court of equity alone has cognizance.—*Holt v. Bancroft,* 30 Ala. 193; *Anniston Carriage Co. v. Ward,* 101 Ala. 670; *Danner v. Brewer,* 96 Ala. 191; *Shirley v. Teal,* 67 Ala. 449; *Merchants' Bank v. Paulk,* 124 Ala. 591.

TYSON, J.—The other members of the court hold that the bill is well filed; that the facts alleged make a case within section 2158 of the Code. It is their opinion that Smith was a mere conduit and was used as a mere instrumentality for evading the statute; and that Struve's attitude toward the Furniture Company, the debtor, was that of a creditor within the meaning of the statute. I can not concur in these views.

[Smith *et al.* v. M̄cCadden & McElwee.]

The object sought to be accomplished by the bill is
to have a certain mortgage executed by Smith to Struve,
both of whom are respondents, declared a general as-
signment for the benefit of complainants and all other
creditors of Wilfred Paley and Robin L. Paley, partners
doing business under the name of the British Furniture
Company, who are also defendants. It appears that on
the 12th day of April 1902, the British Furniture Com-
pany become indebted to a bank in Huntsville in the
sum of one thousand dollars evidenced by their promis-
sory note indorsed by Struve. On the 20th day of May
following, the British Furniture Company, with the
knowledge and consent of Struve, conveyed to Smith
their entire stock of goods, book accounts, etc. being
substantially all of their property, with the understand-
ing and agreement that Smith would execute to Struve
a mortgage in payment of his liability as indorser on
the note held by the bank and upon condition that
Struve should pay the Furniture Company the sum of
one hundred and fifty dollars in cash. In pursuance
of this agreement and at the time of the conveyance to
Smith of the property and as part of the same transac-
tion, Struve paid the one hundred and fifty dollars in
cash and Smith executed the mortgage upon the prop-
erty conveyed to secure the payment of his note in the
sum of $1,165, which mortgage is made an exhibit to the
bill. It is also averred that Smith paid no money or
other valuable consideration for the property, but was
to have any surplus, that might be left over after paying
the $1,000 to Struve. In another place it is averred that
the mortgage executed by Smith recites that it was
given for the purchase-money advanced by Struve to
Smith to purchase said property from the Furniture
Company, but in truth and fact, the same was given and
executed to pay and secure the said sum of one thous-
and dollars, and the said sum of one hundred and fifty
dollars was paid merely with the view of trying to avoid
the provisions of the statute making such conveyance of
the force and effect of a general assignment for the ben-
efit of creditors.

Before entering upon a discussion of the questions
presented, it will be well to note and keep in mind that

19

the bill does not attack the transaction as fraudulent and the relief sought is not to set it aside, *thereby destroying its validity.* On the contrary, the attempt is to sustain the transaction as *valid and legal* under the provisions of the statute upholding the mortgage to Struve as a general assignment.—*Moog v. Talcott,* 72 Ala. 210. And, on the facts averred to affirm the validity of the mortgage is to affirm the validity of the conveyance to Smith since it is asserted in the bill that both are a part of the same transaction and are the result of the sale of the property by the Furniture Company upon a consideration paid to it by Struve and a consideration of detriment to Smith by the execution of his note and mortgage to Struve, investing Smith with the title which that company had, who, in turn, conveyed it by the mortgage to Struve. It is true it is averred that "Smith paid no money or other valuable consideration for the property" (and this is the only allegation tending in the remotest degree to impeach the conveyance to Smith), but the facts averred show that while he paid nothing he became bound to Struve to pay at least one thousand dollars. So then, we think it clear upon the averments that the conveyance to Smith must be regarded as not assailed as invalid, but on the other hand as affirmed to be valid. We have then a case where a debtor sells to a third party, not his creditor, substantially all of his property upon a consideration of a sum in cash paid to him and the promise by the purchaser to pay a certain sum, secured by mortgage, to a party, as we will show later, not a creditor of the seller. Are sales by a debtor, of substantially all of his property, not to a creditor, but to a third person for a present consideration in violation of section 2158 of the Code? That section is as follows: "Every general assignment made by a debtor, or conveyance by a debtor, of substantially all of his property in payment of a prior debt, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally; but this section shall not apply to or embrace

mortgages or pledges or pawns given to secure a debt contracted contemporaneously with the execution of the mortgage or pledge or pawn and for the security of which the mortgage or pledge or pawn was given," etc. This statute originally read: "Every general assignment made by a debtor, by which a preference or priority of payment is given to one or more creditors, over the remaining creditors of the grantor, shall be and enure to the benefit of all the creditors of the grantor equally." § 2126 of Code of 1876. Its purpose was to prohibit a debtor, making a transfer of substantially all of his property *as a security* for the payment of his debts, from discriminating between his creditors; and an absolute sale, unconditional, free from all reservations in payment or satisfaction of antecedent debts was not within its provisions. The reason assigned for allowing a debtor to make an absolute sale of his property to a creditor to pay an antecedent debt was that by the transaction the vendor stripped himself irrevocably of all right, title and interest, present and future, in the subject-matter of the sale. Having no right of redemption—no secret trust resulting to him in any event—the essential element of an assignment was wanting. The conveyance, upon a sale, was in no sense a security for the debt. The debt being satisfied and discharged, the relation of debtor and creditor was extinguished.—*Danner v. Brewer,* 69 Ala. 191. This principle is stated perhaps more clearly in *Otis v. Maguire,* 76 Ala. 295, 298, where it is said: "The species of transaction, against which the statute is leveled, is distinguishable from a mere sale. It involves the transfer by a debtor of property by mortgage, deed of trust, or other conveyance intended as a *security* for and not in payment or satisfaction of a debt due his creditor. It, therefore, implies the idea of a *trust* under the operation of which there is the possibility of a reversion to the debtor of some interest in the proceeds of sale of the property assigned. When the debts intended to be secured are paid, the surplus, after deducting lawful expenses, goes back to the debtor. Such an assignment does not, *ipso facto,* like a sale satisfy the claims of the creditors to any extent, but only provides a

method for raising the means with which to pay them." Under this principle a mortgage by a debtor of substantially all of his property, whether made to secure a past indebtedness or one contracted contemporaneously with its execution, was held to be within the statute. The reason for this ruling is obvious. By it, the debtor secured a benefit to himself and did not part absolutely and unconditionally with his entire interest in the property conveyed. He had a right of redemption. The mortgage, being a mere security for a debt which he owed to his creditor, the mortgagee, every element of an assignment was present.—*Danner v. Brewer, supra; Shirley v. Teal,* 67 Ala. 449; *Ordway v. White,* 80 Ala. 244; *Warten v. Matthews, Ib.* 249; *Collier v. Wood,* 84 Ala. 91. This was the state of the law when this statute was amended so as to make it read as first above quoted. And with this statement of the law before us, the object sought to be accomplished by the change in the statute is made plain. It was clearly two-fold: first, to prevent a debtor from preferring his creditor by an absolute conveyance of all of his property, and second, to allow a debtor to convey by mortgage or to pledge or pawn all of his property to secure a debt contracted by him contemporaneously with its execution, but not antecedent debts. And this marks the limit of the prohibition on the one hand and the permission on the other, now found in the statute. There is nothing in the language employed to support in the remotest degree a construction that it was intended to inhibit a debtor from making an absolute conveyance, upon a present consideration paid to him, of substantially all of his property to a third person. Furthermore, the statute being in derogation of the common law, it must be strictly construed. Applying this rule of construction I doubt not that a sale by a debtor of all of his property to a third person in consideration of that person's promise to pay to a creditor of the grantor the latter's debt must be held not to be a general assignment for the obvious reason that the transaction is not within the words of the statute. It is not a conveyance by the debtor to his creditor and, therefore, the relation

upon which the statute is made to operate is wanting. But it is not necessary to go to that extent in this case. Here there is not only lacking the relation contemplated by the statute between the debtor and Smith, the purchaser, but the conveyance was upon a consideration in money presently paid. It is true the money is alleged to have been paid by Struve, but it was paid for Smith's benefit, as a part of the consideration for the price of the property which Smith got and entered into the consideration for the transfer of the title to the property by the debtors to him. Struve violated no law in making a gift of the money, if he did so, to Smith. And if he did not actually give him the money, he gave him, on the facts averred, its equivalent. This he had the right to do, if he chose. And his intent, or the intent of the debtors, who received full value for their property, or of Smith or the combined purpose or intent of all of them cannot make the act illegal if, in fact, is was legal. It may be that they intended to avoid or circumvent the provisions of the statute and, if they did no act which contravened its provisions, it was their legal right to do so. As said in *Perry Ins. Co. v. Foster*, 58 Ala. 521, "We have no doubt the parties intended to avoid a general assignment, and it was their legal right to do so." Just as an insolvent debtor may, without violating the statute against fraudulent conveyances, transfer his property to a creditor in payment of a *bona fide* debt although he may, at the time, entertain a fraudulent intent to defeat his other creditors and this be known to the creditor accepting the conveyance.—3 Mayfield's Dig. p. 873, §§ 394 *et seq.*

There is another insurmountable barrier in the way of declaring this transaction a general assignment. If the purpose be to hold Struve and Smith as trustees for the property conveyed to the latter, as seems to be indicated by the prayer for a receiver, etc., by what process is Smith to be relieved of his liability to Struve? The mortgage and note bind him. The obligation to pay is still upon him and enforceable by Struve against him. It was not illegal for him to make it and should his property be taken from him, he would nevertheless have it to pay, with no right

to any dividend that may arise from its administration, as trust property, by the court; he not being a creditor of the Furniture Company. For it is not pretended that he stands in the relation of creditor to the company and by no sort of ingenuity can the relation of debtor and creditor between them be evolved from the transaction alleged.

But it may be said that the purpose of the bill is to hold Struve alone as trustee of the note and mortgage executed to him by Smith. The answer to this is that the debtors are not parties to either of those instruments. They executed neither of them, nor was Smith, upon the transaction disclosed, their agent in the making of them. Struve holds no promise of theirs and is not their creditor, but is Smith's creditor and if the note and mortgage be subjected as trust assets in his hands he would have no right to have any portion of his debt paid out of them.

Nor can there be such a thing, on the facts averred, as Smith being a mere conduit for the transmission of the title to the property from the Furniture Company to Struve. If the transmission of title from Smith to Struve had been effectuated by an absolute conveyance, there would be room for the application of this doctrine.—*Merchants & Farmers Bank v. Paulk,* 124 Ala. 591. There is no way, with all respect to the opinion of my brothers, of eliminating the liability of Smith on the note and mortgage. Indeed, the complainants are insisting upon his liability and seek to have it declared as assets in Struve's hands for their benefit. So, then, both upon facts of the transaction and the relief to which the complainants are accorded by the other members of the court, Smith must pay the note and mortgage, notwithstanding he is, forsooth, a mere conduit. Such a conclusion, I submit, is wholly illogical and unsound.

Nor did the fact of the indorsement by Struve for the accommodation of the Furniture Company of the note held by the bank make him a creditor of that company. By his act of indorsement he simply lent his name as a means of credit. His obligation was to pay only in

[West End v. The State, *ex rel.* etc.]

the event the makers failed to pay.—Norton on Bills and notes, p. 173. So far as appears, the Furniture Company owed him nothing on account of his act of indorsement. And in the absence of some contract providing otherwise, that company could not be made liable to him until he had paid the note.—*Lane v. Westmoreland,* 79 Ala. 372; *Swarts v. Seigel,* 114 Fed. Rep. 1001. There is no averment that Struve, as part of the consideration for the sale of the goods to Smith, either paid the note held by the bank or assumed its payment, so as to make him a creditor of the debtors. And if there was, and by any possible course of reasoning the mortgage held by him could be said to be the mortgage of the Furniture Company, it would not operate as a general assignment, since it would be within the permissive language of the statute. It would be executed to secure a debt contracted contemporaneously with its execution.

The first ground of demurrer interposed to the bill by each of the respondents Smith and Struve, in my opinion, should have been sustained.

Affirmed.